# WASHINGTON COUNTY.

### Philip Rexroth *vs.* Herbert Coon.

Bees are animals *feræ naturæ*, and until reclaimed are only owned *ratione soli.*

In obtaining possession of an animal *feræ naturæ*, no title is gained by one who, when so obtaining possession, is a trespasser.

A., without B.'s permission, put upon a tree on B.'s land an empty box for bees to hive in. The box remained there more than two years, when C. took the box down, took out a swarm of bees, and replaced the box. A., after demand upon C., brought trover against C. for the value of the bees, honey, and honey-comb.

*Held,* that A. could not maintain his action against C.

When a case has been heard by the Court of Common Pleas without a jury, both as to law and facts, and the facts as found by the court are brought upon the record by a bill of exceptions, Pub. Stat. R. I. cap. 220, § 10, gives the Supreme Court power to review the rulings of law made by the Court of Common Pleas upon the facts so found.

Exceptions to the Court of Common Pleas. The facts involved are stated in the opinion of the court.

*Providence, May 28, 1885.* Tillinghast, J. This is an action on the case in trover for the recovery of damages for the wrongful conversion of a hive of bees, together with the honey and honey-comb, belonging, as is alleged, to the plaintiff. The case was originally brought and tried in the Justice Court of the town of Westerly, from whence it was carried by appeal to the Court of Common Pleas. In the Court of Common Pleas jury trial was waived, and it was tried to the court upon the law and the facts. It comes here by bill of exceptions, the only exception taken being to the ruling of the court, that, upon the facts which appeared in evidence, the plaintiff was not entitled to recover. Said facts are incorporated in the bill of exceptions, and are a part of the record of the proceedings. They are substantially as fol-

lows, namely : In May, 1881, the plaintiff placed a small pine box, called a bee-hive, in the crotch of a tree in the woods on land of Samuel Green, in the town of Hopkinton. It remained in this position until about the first of September, 1883, when the defendant went upon the premises and took and carried away the hive, together with a swarm of bees that was then in it, also the honey and honey-comb, and appropriated the same to his own use. The plaintiff had visited the hive about twice a year while it remained in its position, for the purpose of ascertaining whether any bees were in it or had been. He had found none. The plaintiff never had any express permission or license from the owner of the land to place or keep his hive in said tree.

The defendant never had any express permission or license from the owner of the land to come upon it, and take and carry away said property. Said hive was at some distance from any house, and no person knew where said bees came from into said hive, although a number of people kept bees in said town. There was evidence that for several years signs had been posted up by said Green on his premises forbidding all persons from trespassing thereon, and that one of said signs was within about twenty rods of said hive, but the plaintiff testified thathe never saw any of them, and that he never had any notice to keep off said premises. The defendant split open said hive, took out its contents, and then nailed it together again and replaced it in said tree in as good condition as it was before he took it away. The defendant testified that he knew the owner of said land had forbidden all persons from trespassing thereon, but that said owner had told him that he did not put up said notice to keep off his neighbors, and had given him permission to go upon said land. Demand was made upon defendant in due form before the commencement of suit. After the suit was commenced the defendant turned over to said Green what then remained in his hands of said bees and honey-comb. The value of the property taken was variously estimated at from $2.50 to $10. Upon said facts the court ruled that the plaintiff was not entitled to recover, and rendered judgment for the defendant for his costs, to which ruling the plaintiff duly excepted.

The only question, therefore, is whether said ruling was correct.

The plaintiff claims that he hived the bees, and that he thereby acquired at least a qualified property in them, notwithstanding they were upon the land of another, which was sufficient to enable him to maintain this action. We do not think the claim can be substantiated. The action is trover, and, in order to recover, the plaintiff must prove title, some title, in himself, coupled with possession or the right of immediate possession. We do not think he has proved either.

Bees are *feræ naturæ,* and the only ownership in them until reclaimed and hived is *ratione soli.* This qualified ownership, however, although exceedingly precarious and of uncertain tenure, cannot be changed or terminated by the act of a mere trespasser. That is to say, the act of reducing a thing *feræ naturæ* into possession, where title is thereby created, must not be wrongful. And if such an act is effected by one who is at the moment a trespasser, no title to the property is created. *Blades* v. *Higgs,* 11 H. L. 621. "Property *ratione soli,*" said the Lord Chancellor in said case, " is the common-law right which every owner of land has to kill and take all such animals *feræ naturæ* as may from time to time be found on his land, and, as soon as this right is exercised, the animal so killed or caught becomes the absolute property of the owner of the soil." It was further held in the same case that such animals, when found, killed, and taken by a mere trespasser, became also the property of the owner of the land, the same as if taken by him or his servants. See *Sutton* v. *Moody,* Ld. Raym. 250 ; *Earl of Lonsdale* v. *Rigg,* 11 Exch. Rep. 654 ; *Rigg* v. *Earl of Lonsdale,* 1 H. & N. 923.

We understand that the law in this country with regard to property in animals *feræ naturæ* is substantially in accord with that of England, excepting, of course, all game laws and statutory regulations, which are now very numerous upon this subject. See *Idol* v. *Jones,* 2 Dev. 162.

In support of the plaintiff's position in the case at bar, he cites the following authorities, namely : 1 Swift's Digest, 169 ; 2 Blackstone Comment. *393 ; 2 Kent Comment. *350 ; 2 Inst. 1, 14, 15 ; *Merrils* v. *Goodwin,* 1 Root, 209 ; *Gillett* v. *Mason,* 7 Johns. Rep. 16 ; and *Goff* v. *Kilts,* 15 Wend. 550. All of these authorities, in so far as they are pertinent, omitting, of course, the citations

REXROTH *v.* COON.

from the civil law, which is not in force here, tend in our judgment to support the defendant's position rather than that of the plaintiff.

The case of *Merrils* v. *Goodwin*, cited by the plaintiff, decides that a man's finding bees in a tree standing upon another man's land, gives him no right either to the tree or the bees ; and that a swarm of bees going from a hive, if they can be followed and identified, are not lost to the owner, but may be reclaimed. That is to say, a man may pursue his property of this sort even upon the land of another, and retake it; and this, although the owner might be liable for a trespass in so doing.

*Gillett* v. *Mason*, 7 Johns. Rep. 16, cited by the plaintiff, also recognizes the doctrine of a qualified ownership in bees, *ratione soli;* and while it decides that hiving or inclosing them gives property therein, and that he who first incloses them in a hive becomes their proprietor, yet it is clear from the general tenor of of the case, as from the note which follows it, that it " must be understood with the restriction that a person could not come upon the land of another without his consent, for the purpose of taking bees, although unreclaimed."

The case of *Goff* v. *Kilts*, 15 Wend. 550, is clearly against the position taken by the plaintiff. It was trespass for taking and destroying a swarm of bees which was the property of the plaintiff, but which left the hive and flew off into a tree on land of another. The owner, however, kept the bees in sight, followed them, and marked the tree into which they entered. The court held that the plaintiff's qualified property in the bees continued so long as he could keep them in sight, and possessed the power to pursue them ; and that, even though he might be liable for trespass in following and retaking them upon the land of another, yet that the qualified property remained in him, and that no one else would be entitled to take them. With regard to obtaining the ownership in bees, the court say : " According to the law of nature, where prior occupancy alone gave right, the individual who first hived the swarm would be entitled to the property in it ; but since the institution of civil society, and the regulation of the right of property by its positive laws, the forest, as well as the cultivated field, belong exclusively to the owner, who has

acquired a title to it under those laws." " The natural right to the enjoyment of the sport of hunting and fowling, wherever animals *feræ naturæ* could be found, has given way, in the progress of society, to the establishment of rights of property better defined and of a more durable character. Hence no one has a right to invade the inclosure of another for that purpose. He would be a trespasser, and as such liable for the game taken." See, also, *Ferguson* v. *Miller*, 1 Cow. 243; *Adams* v. *Burton*, 43 Vt. 36, 38, and Bennett Farm Law, 64.

In the case at bar the plaintiff was a trespasser upon the land of Green from the beginning. He had no right to place the box or hive in the tree; and by placing it there he acquired no title to the bees which subsequently occupied it, or to the honey which they produced. Neither is it material to the issue for us to inquire whether the defendant, by taking the bees and honey away without previous permission from the owner of the land, was also a trespasser; for even admitting that he was, does not in any way aid the plaintiff in this suit. The fact that A. commits a trespass upon land of B., and carries away some of his personal property, would hardly be considered a cause of action in favor of C.

As to the point raised by defendant's counsel that no exception can be taken to the judgment where the court below finds both as to the law and the facts, we have to say that we do not so construe the statute. It provides that " if such . . . party be aggrieved by any opinion, direction, ruling, or judgment of the court of Common Pleas on any matter of law raised by the pleadings or by an agreed statement of facts, or apparent upon or brought upon the record by a bill of exceptions, shall be entitled to have such matter of law heard and decided by the Supreme Court," etc. Pub. Stat. R. I. cap. 220, § 10. The ruling complained of in this case was made upon a certain state of facts, first found by the court below, which facts are brought upon the record by a bill of exceptions. With regard to the finding of those facts we have nothing to do; but with regard to the law applicable to that state of facts, we have to do upon proceedings of this sort. See *Providence Co. Savings Bank* v. *Phalen*, 12 R. I. 495; *Providence*

*Gas Burner Co.* v. *Barney*, 14 R. I. 18 ; *Kenney* v. *Sweeney*, 14 R. I. 581.                          *Exceptions overruled.*

*Thomas H. Peabody*, for plaintiff.

*A. B. Crafts*, for defendant.