### BROWN v. ECKES et al.

(City Court of Yonkers.　July 10, 1916.)

1. ANIMALS ☞2—ANIMALS "FERÆ NATURÆ"—BEES.
　　Bees are "feræ naturæ."
　　[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 1–4; Dec. Dig. ☞2.
　　For other definitions, see Words and Phrases, First and Second Series, Feræ Naturæ.]

2. ANIMALS ☞2—BEES—TITLE.
　　Where a swarm of bees left the owner's premises, his title to them was not destroyed by their alighting on another's land.
　　[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 1–4; Dec. Dig. ☞2.]

3. ANIMALS ☞2—ANIMALS FERÆ NATURÆ—REDUCTION TO POSSESSION BY TRESPASSER—BEES.
　　If the act of reducing to possession wild animals, such as bees, is done by a trespasser, he gets no title, which vests in the owner of the soil, and the wrongdoer is liable to the owner for the trespass and for conversion.
　　[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 1–4; Dec. Dig. ☞2.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. ANIMALS ☞2—BEES—FLIGHT OF SWARM.
    The qualified property of an owner of a swarm of bees, which flies from the hive, continues so long as he in person or by agent can keep them in sight and possesses the power to pursue them.
    [Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 1–4; Dec. Dig. ☞2.]

In the matter of the arbitration of Kenneth W. Brown against Fred Eckes and another. Judgment for complainant.

Clarence Alexander, of Yonkers, for plaintiff.
William Nash, for defendants.

BEALL, J. This is a common-law arbitration, had before this court, wherein the parties stipulate to abide by its decision as to the title of and right of possession to a hive of bees. It appears from the evidence that the complainant, Brown, hived certain bees on Hamilton avenue in this city; that one of the hives swarmed and left Brown's place; that the defendant Eckes was doing some work on the house of a man named Deane, and, seeing a swarm of bees in the air, pounded upon tin and brought them down upon the Deane property, where they located upon a grapevine; that Mr. Deane did not wish any bees, and required Eckes to remove them; that Eckes upon that evening met the defendant Stevens, who claimed that he had lost a swarm of bees; and that Eckes delivered the bees to Stevens.

It has come to the hand of this court to decide all sorts of questions about all sorts of animals, reptiles, and insects. Cases of men, women, and children are constant; cases of those who have wronged others and of those who unjustly contest matters. Horses and their condition, habits, and relationship to their owners and strangers are perpetually with us. We are seldom lonely for the want of a dog case, and have expounded that law at great length, while matters of cats, goats, wild deer, pigeons, birds, including the usefulness of the highhold, otherwise known as the flicker, and as to whether he is a songbird, and of hens and roosters and robins, and as to which of them chiefly annoys the tired man at dawn, are things with which the court is thoroughly familiar. But this is the first time it has had to dive into the interesting question of the law of bees. It is to be presumed that ultimately we shall have to deal with ants and flies and other varieties of insects. The law of snakes we know.

It is not the intention of the court to review the history of bees, of their origin in Asia, and of how they have followed man in the development of civilization, and have been tamed and used by him, and have contributed to his comfort and welfare, although it is an interesting study and one to be recommended. We shall pass without comment the fact that the claimant to these bees is a lawyer, and that no lawyer needs bees to assist him in stinging. The thing really turns on the question of identity, and at the preliminary hearing, when the courtroom was nearly filled with lawyers, I offered to appoint any one of them a referee to make personal examination of these bees for marks of identification, which offer they unanimously rejected, the

first time in my experience with the law that a lawyer has refused to accept a reference.

The original proceeding was to determine whether or not the defendants here were guilty of larceny under that section of the Code which required a man to advertise lost property, and it was even contended that it was the duty of the finder to return this property to the owner—as one should keep a rattlesnake for a pet and allow it to stroll upon another's property, and that other be guilty of larceny unless he returned it; as one should house a tiger which might escape on another's domain, and hold that other guilty of larceny unless he returned it. The court refused to entertain the charge of larceny, and the parties hereto were generous enough to submit the question of ownership to the court as arbitrator.

The custom in London with respect to the trial of men charged with cruelty to animals is this: They are brought to a court, where there is a large yard, and a special judge examines the animals to determine their condition. I have followed the same custom, and nearly always examine the horses where men are brought before me for cruelty to them. The rule of this court for many years has been, in cases involving the ownership of dogs, to take the claimants into my big office, station them at opposite ends of the room, and allow the dog to choose his master. The ownership of pigeons and of chickens we have determined by releasing them at the roosting time and permitting them to decide upon their homes. But in this case I decline to deal personally with the subject-matter of this action, and, together with the lawyers, refuse to make any personal or private inspection of them.

[1] Extensive research has been made into this question of bees by both counsel for the contendants and by the court, and I admit that the subject of the law of the busy bee is a fascinating one. It is admitted by both sides that bees are feræ naturæ, and as to the law of them Blackstone classifies them with wild animals; but Blackstone's law was taken from the Greeks and from the Romans, and, curiously enough, there has been practically no change in that law since the days of Plato, and an uninterrupted line of decisions through Greek, Roman, English, French, the Netherlands, and the English common law, down to late decisions in Iowa, are practically to the same effect —the probable reason for this set policy being the danger of touching the subject. For instance, it has been pointed out to me that Gaius, whose Commentaries are supposed to have been written 160 A. D., states it thus:

"In those wild animals whose nature or custom it is to go away and return—as pigeons, bees, and deer, which habitually go into the forests and return—our rule is laid down that only the determination of the intent of returning marks the end of the property in them, and the property in them is acquired by the next one who take (or occupies) them; it is said that when their habit of returning ceases, their intent (or instinct) of returning also ceases."

And in Justinian's Corpus Juris Civilis it is put as follows:

"Bees are wild by nature; and so, if a swarm alight on your tree, it is not to be considered yours, until you have hived it, any more than the birds

which build their nests there; and hence, if it be hived by another, it becomes his property.  *  *  *  A swarm which has flown from your hive is considered yours as long as it is in your sight, and not difficult to be pursued; otherwise, it belongs to the next person who takes it."

While Domat said:

"As we may possess living creatures, which it is not always possible to have in our power and custody, so we retain possession of them whilst we shut them up, whilst we have them under the care of a keeper, or if, being made tame, they return home without a keeper, as bees to their hives, and pigeons to their dove houses." Civil Law, I, bk. 3, pt. 1, subd. 7, § 2133.

· Puffendorf, in his Law of Nature, expresses it thus:

"Yet bees are no doubt wild by nature, since their custom of returning to their hive doth not proceed from their familiarity with mankind, but from their own secret instinct; they being in all respects utterly unteachable. It is nevertheless one of Plato's laws—whosoever shall pursue the swarms which belong to others and by striking upon the brass shall draw them with the delightful sound to fix near himself, let him make restitution for the damage. Where he seems to presuppose that the owner of the bees did not follow them when they left his hives, Pliny will have the bees to be neither wild nor tame; others divide them into both kinds. But that, so long as they return to our hives, they are properly our own and cannot be hurt without our loss or damage, is very laboriously proved in that declamation of Quintilian, entitled 'The Poor Man's Bees.' " Volume 4, c. 6, § 5.

[2] Of course, if the bees were Brown's, his title to them was not destroyed by the fact that they alighted on Deane's land, and there are pointed out to me many authorities in favor of this. Thibaut (Syst. des Pandekten Rechts) accepts it as the general law of the civilized world. The Code Napoléon (section 564) makes it the law of France and of Algiers. Louisiana, adopting the French Code, adopts it. Section 519, La. Code Civile. Bracton (liber 2, c. 1) recognizes man's qualified property in them both by the natural law as well as the civil law. See also Preuss, Allgemein Landrecht, I, 9, § 118 f. Oesterr; Gesetzbuch, § 384; Duranton, Cours. de Droit, IV, No. 56; Ortolan, Expliq. des Inst. No. 357; Touillier, Cours. de Droit, 4, No. 50; Pand. 33, 7, 12, § 13; also Fr. Lois Usuelles, 4 Anvril, 1889, § 2, subd. 9:

"The proprietor of a swarm has the right to reclaim and repossess them so far as he can see them and follow them; otherwise, the swarm belongs to the owner of the land upon which they affix themselves."

See 3 Kent, Comm. 348; Wallis v. Mease, 3 Bin. (Pa.) 546; Bl. Comm. IV, 236, note 18; Merrils v. Goodwin, 1 Root (Conn.) 209; State v. Repp, 104 Iowa, 305, 73 N. W. 829, 40 L. R. A. 687, 65 Am. St. Rep. 463; Case of Swans, 7 Coke, 15b, 77 Repr. 435.

[3] The act of reducing to possession wild animals must not be wrongful, and if it is done by one who is a trespasser he gets no title, which vests in the owner of the soil, and the wrongdoer is liable to the owner for the trespass and for conversion. Harper v. Galloway, 58 Fla. 255, 51 South. 226, 26 L. R. A. (N. S.) 794, 19 Ann. Cas. 235; Com. v. Chace, 9 Pick. (Mass.) 15, 19 Am. Dec. 348; Lonsdale v. Rigg, 11 Exch., 654; Blades v. Higgs, 3 Eng. Rul. Cas. 76.

"A mere temporary escape of the bees does not divest the title of the owner per industriam. They remain his property. A stranger cannot acquire

title if they intend to return, or the owner promptly pursues or reclaims or can identify them, although they may flee to and alight upon the land of another, where the owner cannot get them without becoming a trespasser himself." Merrils v. Goodwin, supra; Case of Swans, 7 Coke, 15b; Goff v. Kilts, 15 Wend. 550.

In a larceny case it was held:

"To acquire a right in an animal so that it may become a subject of larceny, the pursuer must bring it into his ownership and control, so that he may subject it to his own use at his pleasure, and must so maintain his possession and control as to indicate that he does not intend to abandon them again to the world at large; but in cases where larceny is charged, the law does not require absolute security against the possibility of escape."

[4] And one who asserts a legal title to them once they have swarmed must have kept them in sight until they settled.

"If a swarm [bees] fly from a hive of another, his qualified property continues so long as he can keep them in sight, and possess the power to pursue them. Under these circumstances, no one else is entitled to take them." 2 Bl. Comm. 393; 2 Kent, Com. 394.

We moderns may wonder at the completeness of the law of bees, and at the attention and time that has been expended upon what we regard as a trivial subject. Nothing is trivial that involves human rights. Besides, it may be remembered that, in the days of those whom we term the ancients, the bee occupied a much more important place in the economy of the state than it does now. In Greece, in Egypt, in Judea, and to a somewhat less extent in the Roman provinces, honey was a most important article of commerce.

Upon the whole, I take it that the case turns upon the question of identity, and of whether the owner, and I shall take the liberty of enlarging the doctrine to include an employé of the owner, kept the bees in sight during the swarm until they alighted; this being really part of the question of identification. I determine that Brown has established the ownership of these bees, and is entitled to recover them, passing without comment the fact that this queen bee occasioned all of us a great deal of trouble by organizing the swarm. I make acknowledgment to counsel in the case, William A. Walsh on the one hand and Clarence Alexander on the other, for the ability and thoroughness with which they have briefed the case and helped me to this decision.