## No. 9059.

## CLEMMONS ET AL. *v.* SEYFRIED ET AL.

1. APPEAL AND ERROR—*Verdict on Conflicting Evidence,* under proper instructions, will not be disturbed.

2. *Presumptions.* The contrary not appearing it will be presumed that in a verdict for plaintiff the jury, as it was their duty to do allowed defendant whatever he was entitled to under a counter claim.

3. SPREADING POISON—*Malice—Intent.* Under Rev. Stat. Sec. 1903, 1904, Malice and intention to injure livestock are vital. In a civil action grounded upon the statute, notice given by defendant to the owner of livestock that he intends to spread poison upon his land is no defense, where the criminal intent and malice are conceded or not traversed.

*Error to Rio Grande District Court, Hon. A. Watson Mc-Hendrie, Judge.*

*Department Two.*

Mr. JAMES P. VEERKAMP, for plaintiffs in error.

Mr. JESSE STEPHENSON, for defendants in error.

Opinion by Mr. Justice Denison.

MARY Seyfried, George Bingel and Philip Bingel were in possession of certain land and had sheep pasturing thereon in charge of herders. It adjoined land of Clemmons. They brought this suit against him under R. S. 1908 §§ 1903-4, alleging that he had killed and injured certain of their sheep by placing poisoned wheat on the range and land where said sheep were grazing, with intent to kill the sheep, and hinder and prevent the plaintiffs from keeping the sheep in that vicinity. Norton, Clemmons' servant, was made defendant, but for convenience we disregard him.

Clemmons answered by general denial and counterclaim for trespass by the sheep on his land. Plaintiffs filed a general denial to the counterclaim. The verdict was for plaintiffs.

1. Defendant claims the evidence does not support the verdict.

The evidence showed that Clemmons threatened to put out poisoned wheat, and did put out wheat; that some sheep immediately died, and there was some evidence that they died of poisoned wheat. The defendant's evidence, however, was that while he threatened to put out poison, he did not do so, but, to prevent plaintiffs from trespassing, pretended the wheat was poisoned; that he put it only on his own land, and warned plaintiffs that he would do so, and that they or their servants saw him and his man doing it and immediately drove the sheep away.

The serious questions under the evidence were

(a) Whether the wheat was poisoned; · ·

(b) Whether the sheep were poisoned by it;

(c) Whether it was put out to kill the sheep, or drive plaintiffs from the vicinity, or both, or merely to prevent trespass.

These questions were fairly put to the jury by the court, they found for plaintiffs and we cannot disturb the verdict.

2. Plaintiff in error says that the court erred in refusing instruction No. 2, requested by him, which was that if he notified plaintiffs that he was going to put out poison, then it was their duty to keep their sheep off of and away from said poison, and if they, with knowledge that the poisoned wheat was there, allowed the sheep to go upon defendant's land, they could not recover. This request ignores the purpose of the poison and the malice, which under the statute, are vital things, and requires plaintiffs to keep their sheep off defendant's land at all events, which is not the law.

The court in instruction IV correctly told the jury that Clemmons had a right to put the wheat, "poisoned or otherwise, on his own land, for a legitimate purpose," and if sheep ate it he was not liable, but that if he put it out wilfully and maliciously for the purpose stated in the statute, he was liable; and continued as follows:

"That is to say, the defendant had no right under the law to place poisoned wheat on his own land or elsewhere for the malicious and willful purpose of killing or injuring said sheep or hindering or preventing the herders from herding or keeping said sheep in that vicinity, or on a range not occupied by actual settlers or with the intent to break up or hinder, prevent, disturb or molest the business of herding or keeping such flock or producing or propagating the same; and should you find from a preponderance of the evidence that the acts committed by the defendant were committed for the purpose last aforesaid, then you should find for the plaintiffs."

This was an accurate statement of the law applicable to the case.

3. Defendant claims he ought to have recovered on his counterclaim. We cannot say that he did not. It was the duty of the jury to deduct from the plaintiff's damages whatever damages were due from plaintiff to defendant and render a verdict for the balance, and the record does not show that they did otherwise. We must presume that they considered the counterclaim in making up their verdict.

*Richards v. Richards*, 20 Colo. 303, 39 Pac. 325.

The judgment should be affirmed.

Judgment affirmed.

Chief Justice Garrigues and Mr. Justice Scott concur.