No. 14,727.

HOLT *v.* MUNDELL.
(112 P. [2d] 1039)

Decided April 21, 1941.

Mr. ALFRED A. ARRAJ, Mr. ARTHUR C. GORDON, for plaintiff in error.

Mr. ALLYN COLE, Mr. L. H. ALBERTI, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

GROVER MUNDELL, defendant in error, to whom we hereinafter refer as plaintiff or by name, was engaged in the cattle business on a large scale, his ranch being made up of scattered tracts in Baca county and comprising approximately six thousand acres. Adjacent thereto defendant Holt, plaintiff in error, as a tenant, was farming 160 acres, irrigated by the use of pumps,

the principal crop grown on the land being maize. During the years of 1936 and 1937 this locality was afflicted with a grasshopper plague which was highly injurious to crops. To combat this plague the government distributed grasshopper poison free to those engaged in farming in that vicinity. Holt used some of this poison on the premises occupied by him in both years. The poison was mixed with sawdust and bran, was furnished to Holt in burlap bags and unsacked loads, and was hauled by him from the mixing plants and applied to a portion of the 160 acres in question. Holt informed Mundell, in July, 1937, that he was spreading some poison on the 160 acres for the purpose of killing grasshoppers. This spreading continued until October, 1937. Holt harvested his maize crop in the latter part of January, 1938, and did not thereafter return to the premises, his lease expiring March 1 of that year. At no time did he live on the land. He admits that at the time he left the premises, after harvesting the crop, some of the grasshopper poison was stored in the pumphouse and dugout, where, he claims, it was not readily accessible to cattle. For some time prior to February 8, 1938, Mundell, on several occasions, had been "caking" his cattle along the south line of the Holt tract and on that day, as he testified, he found five of his cows dead thereon; that he also found some bran or sawdust in a sack near the dugout and pumphouse and some remnants of other sacks and a small quantity of the same substance between those two structures. The testimony is conflicting as to whether Holt at that time maintained a lawful fence around his premises as defined by sections 56 and 57, chapter 160, '35 C.S.A. February 8, Mundell permitted his stock to graze on the Holt premises, and when he visited the place two days later he found five more of his cows dead and others affected. Thereafter Mundell instituted this proceeding by filing a complaint setting up three causes of action: 1. That defendant wilfully and maliciously poisoned his cattle. 2. That de-

fendant wrongfully and negligently poisoned his cattle and that the infliction of the damage of which he complained was "attended by circumstances of malice, insult, and a wanton and reckless disregard of plaintiff's rights and feelings." 3. That defendant failed to maintain a lawful fence by reason of which plaintiff's cattle entered his premises where he had negligently left and scattered poison, some of which was consumed by plaintiff's cattle, resulting in the death of a number of them, to his damage. The third cause of action was dismissed by the court on motion of counsel for Holt. The issues joined on the first and second causes of action were submitted to the jury. On the first cause the verdict was in favor of plaintiff in the sum of $250; on the second cause it was in favor of defendant Holt. On the verdict for plaintiff, the trial court, assuming to act under authority of sections 390 and 391, chapter 48, '35 C.S.A., awarded him a judgment for triple damages in the sum of $750, to review which Holt brings the case here by appropriate procedure.

The errors assigned may be summarized as follows: (1) Permitting testimony of a statement containing an alleged threat by defendant Horace Brill—codefendant below—to be considered in evidence as against defendant Holt; (2) submitting both first and second causes of action to the jury; (3) refusing to give tendered instructions, and giving certain alleged erroneous instructions; (4) erroneously submitting the case to the jury. Mundell assigns cross errors to the court's action in dismissing the third cause of action and in sustaining an objection by Holt to the introduction of plaintiff's exhibit B.

One Horace Brill was joined as a defendant with Holt below, but he does not appear here as a plaintiff in error. He is Holt's father-in-law and made occasional trips to the land farmed by Holt. In 1936 Brill assisted in spreading some of the grasshopper poison on the Holt premises; but there is no evidence which in any

manner connects him with Holt in the farming enter-
prise in 1937 other than occasional trips to the property.
As tending to prove agency, the court admitted in evi-
dence, the return receipt of a registered letter signed
by Brill for Holt. The uncontradicted testimony shows
that this was at the request of his daughter, Mrs. Holt,
who asked him to obtain the letter from the postoffice.
In an effort to prove malice, Mundell, over Holt's ob-
jections, was permitted to testify to a conversation with
Brill occurring out of the presence of Holt, in 1937,
before the harvest, and near the premises in question,
as follows:

"Q. When you were calling these cattle, you say Mr.
Brill came? A. Yes, sir.

"Q. What did he say, or do? A. He just drove up,
and I said them cows are in that field there, and he said
yes; but he said they better not get over on the other
side.

"Q. What other side? A. In this other field they had
there where he was farming.

"Q. What answer did you make to that? A. I told
him there was nothing to keep them out; they was sure
to get in there."

The undisputed evidence, which leaves no other in-
ference, discloses that Brill had no authority whatsoever
to make any statement for Holt. Although this evidence,
as tending to show malice, has very slight, if any,
weight, its admission as against Holt clearly was error.

 Prior to trial counsel for Holt moved the court
to require Mundell to elect upon which of his alleged
causes of action he would proceed. This motion was de-
nied, with permission to renew it before final submis-
sion of the case to the court or jury. Defendant did not
avail himself of this permission; therefore the motion
to elect may be considered as having been waived;
moreover, the question of election, considering the
time at which it was raised, was a matter within the dis-
cretion of the court. This does not mean, however, that

the jury could properly return a verdict against Holt on both the first and second causes of action, and the failure of the court to so instruct, in our opinion, confused the jury in considering and returning their verdicts. They should have been instructed that a verdict against Holt could be returned only on the first or second cause, and if so returned on either it was necessary that they fix the actual damages sustained by plaintiff. Of course, defendant Holt could not be assessed twice for such damages. Again, on the first cause of action, on a verdict in favor of plaintiff, the trial court could penalize defendant in treble the amount of actual damages. On the second cause the jury could have found exemplary damages. In our opinion, only one and not both penalties could legally be imposed upon defendant, but since the jury found in favor of Holt on the second cause, we deem further comment on this phase of the case unnecessary.

██ In passing upon errors assigned to the refusal of tendered instructions, and to those given, it must be borne in mind that the case was submitted to the jury on two causes of action, the first being for damages for maliciously poisoning cattle of plaintiff; and the second for wrongfully and negligently poisoning cattle of plaintiff, the injury and damage being attended by circumstances of malice, recklessness and wantonness. The failure of the trial court to properly distinguish these causes of action in its instructions is, in our opinion, responsible for most of the confusion and error appearing in the record. We do not attempt to discuss all of the instructions, but we feel that something should be said relative to the applicable law. Concerning the first cause, our statute ('35 C.S.A., c. 48, §§390, 391) provides that any person who shall wilfully and maliciously kill, cripple or injure any bull, cow, steer, heifer or calf by poisoning, or with intent to break up, hinder, prevent, disturb or molest the business of keeping any herd of stock, shall be liable to any party injured thereby, in

three times the amount of the actual injury sustained. It is immaterial where such poisoning takes place or what other means are used, in addition to the poison, to bring about the injurious result. Neither invitation nor trespass is essential. The important test is that the acts be done intentionally, and that the cattle were killed or injured as a result thereof. In the case of *Richards v. Sanderson*, 39 Colo. 270, 280, 89 Pac. 769, in construing section 390, supra, we said: "Maliciously, as used in the statute, means a wrongful act done intentionally, without just cause or excuse." The purpose of the poison and malice are essential factors. *Clemmons v. Seyfried*, 66 Colo. 58, 179 Pac. 140.

■ The law applicable to the second cause of action differs from that relevant to the first cause. In the second cause we are concerned with whether defendant wrongfully and negligently poisoned plaintiff's cattle, to the latter's damage. The law concerning liability for injury to cattle trespassing on premises of another and injured by poison thereon is set out in 33 A.L.R. at page 449. The writer there states, what in our opinion is the law on this subject, as follows: "In general, it may be said that the owner of premises, inclosed or otherwise, is not bound to keep them safe for trespassing animals, and is not liable for injuries to such cattle resulting from eating or drinking poisonous or other substances on the premises; and this is true both in sections where stock are lawfully allowed to run at large, and in jurisdictions where the common-law rule as to keeping animals from straying is in force." In support of this text the case of *Beinhorn v. Griswold*, 27 Mont. 79, 69 Pac. 557, is cited. Counsel for defendant rely upon this case as sustaining their claim of nonliability. While the case contains an excellent statement on the subject and supports the general rule above quoted, it expressly holds that the doctrine of alurement or attraction, as set out in plaintiff's third cause of action in the instant case, is not applicable to the facts in that case. Excep-

tions to the general rule stated in 33 A.L.R. appear on page 451 of the same volume, where cases in support of the attractive nuisance doctrine are cited. See, also, 2 Am. Jur., p. 784, §123.

■ Some of the instructions tendered by defendant and refused were covered by other given instructions. He assigns error particularly on the refusal of the court to give his tendered instruction No. 5, reading as follows: "You are instructed that the defendants, or either of them had the right to use and store grasshopper poison on their premises for use of poisoning grasshoppers at the time or in the future, as long as the same was not also done for the purpose of and with the intention of injuring or destroying cattle lured thereby on the premises." This instruction, with the omission of the word "thereby," in the last line, was given by the court as instruction No. 9. The refusal to give this requested instruction was not error, because it did not distinguish between the first and second causes of action. Under the first cause of action, the poisoning of cattle might have been intentionally carried out by any means, and it was not necessary that the grasshopper poison lured the cattle onto defendant's premises. They may have been enticed there by other means. It is not necessary that the grasshopper poison operate on the livestock before the trespass. As applied to negligence under the second cause, however, the cattle must have been lured "thereby"; that is, by grasshopper poison left in sacks or otherwise. "The agency which causes the injury must be the agency which attracted the animals." This criticism of the failure to distinguish between the two causes also applies to given instruction No. 9.

■ Coming to the errors assigned to instructions given, instruction No. 1 sets forth the allegations contained in the pleadings of the parties, and the issues to be considered by the jury. Counsel for Holt concede that it fairly follows the pleadings, but they contend

that the evidence introduced, in some respects, was a departure therefrom. No error was committed in the giving of this instruction; but we suggest, as a matter of good practice, that as a conclusion to such an instruction the jury should be advised that it was given to clarify the issues made by the pleadings, and that the statements of alleged facts therein should not be considered by the jury as evidence in arriving at their verdict.

Defendant objected to the giving of instruction No. 3, for the reason that the court, in defining the word "maliciously" as used in section 390, supra, omitted therefrom the words "without just cause." As supporting this objection counsel for Holt rely upon our definition of the word "maliciously" announced in the case of *Richards v. Sanderson, supra,* where we included the words omitted by the court in its instruction No. 3. In view of Holt's contention of a lawful use of the grasshopper poison, unaccompanied by any malice, these words should have formed a part of the instruction, and their omission therefrom was error.

A more serious error was committed in the giving of instruction No. 5, as follows: "The term 'malice' as used in law and in these instructions, may be found by the jury from the reckless and wanton acts of the injuring party, such as disclose an utter disregard of consequences, aside from any intentional malice in its odious or malevolent sense. The feeling mentioned may be physical as well as mental, and 'wanton' means willful and intentional. It is not necessary that defendants should have known the conditions and known that the injury would result from their conduct. If, conscious of such conduct and the existing conditions, they knew, or should have known, that the injury would probably result, the requirements of the law are met." It will be noted that this instruction fails to distinguish between malice unconnected with the first, and as applicable to exemplary damages under the second, cause

of action. If its application had been confined to the second cause our problem would be different. It was, however, applied to all instructions and therefore was highly prejudicial. It was not a correct statement of the term "malice" as applied to the first cause of action. *Richards v. Sanderson, supra.* Moreover, the statement, "It is not necessary that defendants should have known the conditions," clearly does not apply to violations of the provisions of section 390, supra, which violations, to be actionable, must be willful and intentional. Confusion in the minds of the jurors undoubtedly resulted from this instruction, the giving of which constituted prejudicial error.

 Having discussed the law as applied to the issues in the case, and in view of a possible retrial, we deem it unnecessary to pass upon other errors assigned to the giving of instructions. In the event of a retrial, we suggest that the law applicable to the case should not be given to the jury in so many separate instructions. The purpose of instructions is to enlighten the jury, and if they are unnecessarily voluminous, this end is not attained. *Rio Grande Southern R.R. Co. v. Campbell,* 44 Colo. 1, 20, 96 Pac. 986.

 Counsel for Holt contend that the court committed error in submitting the first cause of action to the jury, for the reason that it does not affirmatively appear from the evidence that defendant placed the grasshopper poison on his premises "wilfully" and "maliciously." The evidence upon which plaintiff most strongly relies as showing malice, is a conversation which took place some time in the latter part of January, 1938, between him and Holt. Holt claimed that Mundell's stock had damaged his crop on the premises here involved and demanded payment therefor, fixing his damage at $30; Mundell offered $15. They did not reach an agreement, and in the discussion, which was somewhat acrimonious, Holt stated, according to Mundell's testimony—denied by Holt—"I don't think your

damned cattle will profit by running in there anyway." We have carefully considered the entire record, and while in our opinion the weight of the evidence as to malice was not very substantial, it was sufficient to warrant its submission to the jury.

 Mundell assigns cross errors to the action of the trial court in dismissing the third cause of action, which alleged simple negligence, based upon the attractive nuisance theory hereinbefore mentioned. The second cause, in which the jury returned a verdict in favor of the defendant, also was predicated upon negligence, supplemented by allegations of malice, wantonness and recklessness, in order to obtain exemplary damages, but it did not contain averments which would make the attractive nuisance doctrine applicable.

The record is not clear upon what theory the court dismissed the third cause. In our opinion, a cause of action showing liability was stated against defendants on simple negligence, under the attractive nuisance doctrine. 2 Am. Jur., p. 784, §123. In view of the state of the record, we leave to the trial court the determination of whether, in the event of retrial, the third cause should be reinstated. As to whether there was evidence to sustain this cause, had it not been dismissed, we express no opinion.

 No error was committed in the rejection of exhibit B offered in evidence by plaintiff, it being an unsigned form such as was used by the Government in the distribution of grasshopper poison. By signing the form the recipient of poison assumed all responsibility for any damage resulting from its use. It had no evidentiary value in the determination of the issues here involved.

The judgment is reversed and the cause is remanded for further proceedings in conformity with the views announced in this opinion.

Mr. Justice Young and Mr. Justice Hilliard not participating.