[Civ. No. 7574.   Third Dist.   Dec. 22, 1949.]

FRED LENK, Appellant, v. VICTOR SPEZIA et al., Respondents.

A. G. Bailey and John A. Young for Appellant.

Russell A. Harris for Respondents.

THOMPSON, J.—The plaintiff brought suit for damages against the defendants as individuals and as copartners for negligently killing 518 hives of bees and causing the loss of 14 tons of honey which would have otherwise been produced. It is alleged the bees were poisoned by the negligent dusting of crops of tomatoes with insecticide compound containing arsenic trioxide, from an airplane, and thus permitting the poisonous dust to drift or lodge on plaintiff's hives and bees which were located near by, and by depositing the poisonous insecticide on the feeding fields of the bees. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the defendants in every essential respect. A judgment was rendered accordingly to the effect that plaintiff is entitled to take nothing by this action. From that judgment this appeal was perfected.

The answer denies the material allegations of the complaint, except that it is admitted the defendants dusted tomato crops in that vicinity from their airplane with insecticide powder containing a small proportion of arsenic, for the necessary benefit and protection of said crops of tomatoes from prevalent insects, worms and pests. The answer specifically denies that defendants deposited or negligently permitted poisonous insecticide to be carried to or spread upon plaintiff's bees or feeding grounds, and affirmatively alleges that plaintiff's loss of bees and honey was due to his own contributory negligence in failing and refusing to remove the hives or to protect the bees from the poisonous dust in spite of the fact that he had previous knowledge of the defendants' intention to use that powder to dust the tomato crops in the vicinity of his hives.

The court found that plaintiff owned the hives and bees which he kept in several colonies in Lisbon and Clarksburg districts in Yolo County; that said bees ranged over a wide field at distances of five miles from their hives in search of nectar and pollen; that defendants did not spread or deposit insecticide powder negligently or at all upon plaintiff's bees or upon their feeding grounds; that the defendants were not negligent in dusting the crops of fruit or tomatoes in fields adjacent to the places where plaintiff's hives and bees were kept; that said bees were not poisoned and did not die as a result of defendants' negligence or carelessness in dusting the crops in that vicinity. On the contrary, the court affirmatively found that the bees were destroyed on account of the contributory negligence of plaintiff in failing and refusing to exercise any care for their protection in spite of the fact that

plaintiff had full knowledge of defendants' intention to use the poisonous insecticide in dusting the tomato crops on fields in the immediate vicinity of his hives of bees.

The evident theory of the court was that the cause of the death of plaintiff's colonies of bees was his negligence in deliberately releasing his bees from their hives and permitting them to range over the surrounding fields for nectar and pollen, when he had full knowledge that crops in adjacent fields had been or were about to be dusted with insecticide powder containing arsenic which he knew to be poisonous to bees.

The appellant's theory of the cause of the death of his bees was that defendants released the poisonous insecticide powder from their airplane when the wind was blowing directly toward the places where their hives were stationed, and that the poisonous compound drifted to and upon his hives and bees. There is a conflict of evidence upon that issue. In effect, the court found against the plaintiff on that theory by determining that the defendants did not negligently deposit insecticide dust or powder upon the hives or bees, or upon their feeding fields. There is substantial evidence to support that finding.

Honeybees often obtain the poison when feeding on blossoms in fields which have been dusted or sprayed for the protection of the crops and carry it back to the hives in the nectar or pollen, which sometimes results in the death of the entire colony of bees.

In Roy A. Grout's recent volume, "The Hive and the Honey Bee," the author says that for many years toxic compounds have been used to protect fruit and vegetables from pests. The trees and vines are usually sprayed when they are in full bloom. That is the very time when the bees visit them in search of nectar and pollen. It is difficult to protect the fruit and vegetables from pests without detriment to the bees which usually get the poison from the blossoms after they have been sprayed or dusted. They sometimes die immediately or soon if they get sufficient poison. But they often take it back to the hive in the nectar or pollen or both, which sometimes results in the death of the entire colony of bees.

We are of the opinion that the evidence adequately supports the findings and judgment. We are convinced that large numbers of plaintiff's bees died in and about their apiaries, and probably they died from poisoned insecticide which they procured in other fields while they were ranging

in search of coveted nectar or pollen, or from poisoned dust which drifted with the wind from other fields to the hives of plaintiff. But we are unable to say, as a matter of law, that they were poisoned by the insecticide which was released from defendants' airplane. There is some evidence that other farmers were dusting their crops in that vicinity about the same time. One of said crops was located just across the river from one of plaintiff's apiaries.

In the present case the burden was on plaintiff to prove, not only that it was the poisonous dust used by the defendants which killed his bees, but also that defendants were guilty of negligence on account of the manner in which they dusted the adjacent tomato fields, and that such negligence was the proximate cause of the death of the bees. This court must view the evidence and the reasonable deductions to be drawn therefrom in a light most favorable to the respondents, and must resolve all conflicts of evidence in support of the findings and judgment, if reasonably possible. (*Davis* v. *Stulman*, 72 Cal.App.2d 255 [164 P.2d 787].) Even though we might differ with the conclusions of the trial court regarding the weight or sufficiency of the evidence to show negligence on the part of the defendants, since there is substantial evidence to support the findings we cannot interfere with the judgment of the trial court. When reasonable minds may differ regarding the sufficiency of the evidence to establish essential facts to support adopted findings, a reviewing court is bound by the judgment of the trial court. That is the situation in the present case. For that reason we may not interfere with the judgment in this case.

It is true that a defendant who is engaged in spraying or dusting fruit, vegetables or other products with the use of an airplane, or otherwise, by negligently spreading liquid or powder known to contain a dangerous proportion of arsenic or other poisons, in such a manner as to endanger the lives of bees, animals or property of another person in the immediate vicinity, may become liable for the damages resulting therefrom. (*Miles* v. *A. Arena & Co.*, 23 Cal.App.2d 680 [73 P.2d 1260]; *Lundberg* v. *Bolon*, 67 Ariz. 259 [194 P.2d 454]; *S. A. Gerrard Co., Inc.* v. *Fricker*, 42 Ariz. 503 [27 P.2d 678]; *Hammond Ranch Corp.* v. *Dodson*, 199 Ark. 846 [136 S.W.2d 484].)

But in the Miles case, *supra*, a judgment was rendered against the defendant for negligently dusting a field of honeydew melons by means of an airplane from which poisonous

insecticide was spread while a wind was blowing directly toward plaintiff's land where the hives of bees were located. That judgment was affirmed on appeal because the evidence was completely satisfactory, if not undisputed, that the defendant knowingly released the poisonous dust from its airplane while the wind was blowing toward plaintiff's hives and the poison actually reached the hives and killed all the bees they contained, including the queen bees which are known to remain in their hives. That is some proof that the bees in and about the apiary died from the poisoned compound which drifted from the field dusted by the defendant. Specimens of the identical dust taken from the bees and the hives were procured and analyzed. The trial court adopted definite findings that it was the defendant's poisonous dust which drifted to and upon plaintiff's bees and killed them. In the present case the findings were just the contrary in that regard. The appellate court said:

". . . He should not do the dusting, or have it done, under conditions which would indicate to a reasonably prudent person that damage to his neighbor would result.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Defendants knew, or should have known, that the light dust projected under pressure onto the melons would float in the air  There is evidence that a light breeze was blowing during the dusting operations. They should have known that the dust would float for a considerable distance when propelled by such a breeze. Dusting material containing a poison that would kill bees was used. Under the conditions prevailing at the time they should have foreseen the ensuing damage to plaintiff. It follows that they must respond in damages.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . There is ample, competent and material evidence in the record to support the finding that plaintiff's bees were killed by the poisonous dust that drifted from the A. Arena & Company field."

The other cited bee cases are similarly determined upon ample evidence of negligence to support the findings and judgments. In each case, the judgment was affirmed on appeal for the same reason. Those cases are distinguishable from the facts of the present case.

It appears that the law with respect to liability for negligently causing the death of or injury to animals also applies to bees when they have become domesticated. They fall

302

within the same category. (See *Rexroth* v. *Coon*, 15 R.I. 35 [23 A. 37, 2 Am.St.Rep. 863] ; 3 C.J. § 1, p. 16.)

The life and habits of the bee are extremely interesting subjects. The aphidae bee is *ferae naturae*. (*Brown* v. *Eckes*, 160 N.Y.S. 489, 491-492.) The honeybee is highly socialized, and has become domesticated. It hails from ancient Lebanon in the Holy Land and Egypt, where it was highly prized. (Gen. 43 :11.) It produces honey and wax for the profit and enjoyment of mankind. This industrious insect is short-lived. It lives and labors only from three to six months, but it improves every moment of its brief existence. Nature has provided the bee with a marvelous elongated proboscis with which it dips deep into the pistil or stamen of flowers to extract the secreted nectar for its store of honey. It gathers pollen and mixes it with nectar to form a paste which it packs away in its amazing duffle-bags, called the scopa, on its lower legs, to be carried to the "palace of the queen" to furnish food for the larvae ; it augments the wind as a carrier of pollen to fertilize the blossoms of fruit trees to help produce bountiful crops. The bee is a forager by nature and frequently flies a distance of ten miles from its hive in search of coveted food. For instruction on the biography of the bee, reference is made to John Muir's "The Bee Pastures of California," Maurice Maeterlinck's "Life of the Bee," "The Hive and the Honey Bee" by Roy A. Grout, Frank Stuart's "City of the Bees" and A. I. Root's "A.B.C. and X.Y.Z. of Bee Culture." Valuable information may be derived from these classics. The "busy bee" has contributed much to the pleasure and profit of mankind. The bee industry is entitled to the protection of the law, as indeed are all branches of husbandry which so greatly contribute to the welfare of mankind.

There is much evidence and argument in the briefs regarding the question as to whether plaintiff's bees were poisoned from defendants' insecticide while feeding on the sweet anise, morning glory, star thistle or other blossoms in or near the tomato fields which had been dusted. Respondents contend that if that be true they would not be liable for damages since the bees were trespassers and they owed no duty to protect plaintiff's property interest therein.

If plaintiff's bees procured the poisonous compound from which they died while they were trespassing on the fields of other owners of land, it appears that the plaintiff could not recover damages unless the poison was distributed wantonly, maliciously, or with the deliberate intent to injure or destroy

the bees. There is no evidence in this case of such wanton or malicious conduct. Under such circumstances there was no duty on the defendants or the owners of the land to protect plaintiff's trespassing bees from the danger of said poisonous compound. (*Holt* v. *Mundell*, 107 Colo. 373 [112 P.2d 1039, 1043]; *Jeanes* v. *Holtz*, 94 Cal.App.2d 826 [211 P.2d 925]; 3 C.J.S. § 213(d) bb, p. 1330.)

In the Holt case, *supra*, defendant sprayed his crop of maize with a compound containing poison to protect the growing grain from grasshoppers which were prevalent and harmful to his crop. Plaintiff's cattle trespassed on that land and evidently procured some of the poisonous mixture, as a result of which several cows died. Plaintiff brought suit for damages and recovered judgment. On appeal the judgment was reversed. The court held that because the cattle were trespassing on the land at the time they procured the poisonous mixture from which they died, the plaintiff was precluded from recovering damages. Quoting with approval from the text in 33 American Law Reports at page 449, the court said in that regard:

". . . In general, it may be said that the owner of premises, inclosed or otherwise, is not bound to keep them safe for trespassing animals, and is not liable for injuries to such cattle resulting from eating or drinking poisonous or other substances on the premises; and this is true both in sections where stock are lawfully allowed to run at large, and in jurisdictions where the common-law rule as to keeping animals from straying is in force."

In 3 Corpus Juris Secundum, section (d) bb, at page 1330, it is said in that regard:

"An owner is not liable for death to trespassing animals from poison on his premises where the poison was intended for another purpose, and he was not guilty of gross or wanton negligence."

We are of the opinion the same rule applies to trespassing bees.

But the plaintiff in this case appears to rely chiefly on his contention that the poisonous insecticide was negligently permitted by the defendants to be carried by the wind, while they were dusting the tomato crops in adjacent fields, to and upon the hives and bees of plaintiff. The court adopted findings adverse to plaintiff on that issue. There is a conflict of evidence in that regard. But there is substantial evidence to support those findings.

In 1945, the plaintiff owned and maintained hives of bees in four localities. One apiary was located on the "Morton place" near Clarksburg on the Sacramento River. Another was kept on defendant's "home place" at Winchester cut on the Sacramento River. A third apiary was maintained near by at the Lisbon-Glide property on the Sacramento River, and the fourth apiary was on the Rogers-Perilli property. In 1946, he maintained only two apiaries, one of which was on his home place and the other on the Lisbon-Glide property. Plaintiff was an experienced beekeeper, having been engaged in that industry for some 38 years. Many farmers in that vicinity produced tomatoes, which they were accustomed to spray or dust in the months of August and September of each year to protect the crops from worms, insects and other detrimental pests. The plaintiff knew of that fact. He knew that the insecticide used by the defendants was poisonous to the bees. He was personally notified and knew that they intended to use that compound to dust the tomato crops. He had previously protected his bees on such occasions by either removing the hives or by screening them. But upon the occasions complained of in this suit, with knowledge of the intention of the defendants to dust the crops, he failed and refused to take any of said precautions to protect them. On the contrary, he removed the screens and permitted the bees to leave their hives and go at large.

The defendants were engaged in dusting tomato crops in the vicinity of plaintiff's apiaries by blowing the insecticide upon the vines and crops from an airplane. In July and August, 1946, defendants dusted the tomato crop of Mr. Pylman which was situated three-quarters of a mile northeast of plaintiff's home place. In August of that year they similarly treated the tomato crop of Mr. Fonts, situated about one-half mile northwest of plaintiff's Lisbon apiary. That same year they dusted the tomato crop of Mr. Silva situated one mile northwest of plaintiff's same premises. And in August of that year they dusted a large tomato crop belonging to Mr. Krull, which was located two miles southwest of plaintiff's home place. There is evidence that other operators also dusted other crops in that vicinity in a similar manner. Defendants testified that before dusting said crops they personally notified plaintiff of their intention to do so, and offered to use their trucks to assist him in removing his hives to a safe place, but that he refused to take any means of protecting his bees, saying, with respect to a particular crop, that "If we dusted that

job he would sue us.'' Mr. Borges, one of the defendants, testified that before proceeding to dust the crops, they flew their airplane along the border of the fields and released powder to determine whether it would be carried by the wind toward plaintiff's apiaries, and that if the wind was blowing in that direction they delayed the proceeding of dusting. He said that when they actually dusted the crops the wind was blowing ''just the opposite direction.'' There is also evidence that just before dusting the tomato crop adjacent to plaintiff's home place, with knowledge of their intention to do so the plaintiff removed the screens which he had previously placed over the hives.

It is true that plaintiff lost many colonies of bees as the probable result of poisonous insecticide used by someone. He found many dead bees in his yard and about the hives. He testified that the powder which he found upon the hives and bees, and which was analyzed and found to be poisonous, was *gray* or *green* in color. But the defendant Spezia testified that the only insecticide which they used was *pink* in color. The evidence fails to show that any pink powder was found on plaintiff's bees, hives or premises.

The foregoing evidence not only fails to satisfactorily show that it was the insecticide which was used by the defendant to spray the crops of tomatoes that killed plaintiff's bees, but there is substantial proof that, with full knowledge on the part of plaintiff that it was to be used, he failed and neglected to exercise ordinary precaution to either remove his hives or to adequately screen them during the periods of dusting, for protection of the bees. We are of the opinion the evidence on that subject sustains the findings of the court that plaintiff lost his bees as a result of his own contributory negligence.

When the owner of animals or bees contributes proximately to their injury or death, he is thereby barred from recovery. If the owner of animals or bees has full knowledge of anticipated or actual performance of acts which will result in injury, and he fails and refuses to exercise reasonable precaution to protect them, he is guilty of contributory negligence which will preclude him from recovering damages. (*Richards* v. *Waltz*, 153 Mich. 416 [117 N.W. 193] ; 2 Restatement of the Law of Torts § 498b, p. 1288 ; 45 C.J. § 530, p. 976 ; 19 Cal.Jur. §§ 74-76, p. 644 ; 3 C.J.S. § 215, p. 1330.) In the text last cited it is said :

''Contributory negligence of the owner of the animal is a bar to a recovery.''

We are constrained to hold there is ample evidence in this case to support the findings that plaintiff is barred from recovery by his contributory negligence.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.