### KENTUCKY AEROSPRAY, Inc. v. MAYS.

Court of Appeals of Kentucky.
Sept. 26, 1952.

Davis, Boehl, Viser & Marcus, A. J. Deindoerfer, Louisville, Julian W. Knippenberg, Lexington, for appellant.

Elwood Rosenbaum, Lexington, for appellee.

STEWART, Justice.

This is an appeal from a judgment of $1000 in favor of appellee, Roy H. Mays, against appellant, Kentucky Aerospray, a corporation.

Appellee, a commercial minnow dealer, sued appellant for the destruction of between 150,000 and 170,000 minnows which appellee had stored in a pond. Adjacent to the pond was a patch of tobacco which appellant sprayed from an aeroplane and, in the operation, appellee claimed a quantity of the poisonous spray fell into the pond and caused the death of his minnows. The tobacco was raised on appellee's land by a tenant and the latter arranged for the spraying without the knowledge or consent of appellee.

A summary of the testimony reveals that the pond was approximately 110 feet east of the patch of tobacco. The airplane made three trips over the patch of tobacco and the pond. Appellee, who watched the spraying from a position about 250 feet from the pond, stated he did not see any spray actually fall on the pond, although he said he saw mist flying from the aircraft as it circled over it. A neighbor, Mrs. Victor Fuller, who with her little daughter was standing just beyond a fence near the pond, testified that the fumes and odor from the spraying were so strong she and her little girl had to go indoors.

Appellee testified he noticed there were dead minnows in the pond the day following the spraying and at that time he said he removed around 5000 of them. The next day the entire surface of the pond, which he estimated was 150 feet long and 50 feet wide and 6 feet deep, was covered with dead minnows. After a period of seven or eight days from the date of the spraying there were no live minnows at all in the pond. Appellee's evidence further brought out the undisputed fact that the minnows had been alive and healthy for several months prior to the spraying.

Appellant urges a reversal because he claims there was no evidence to enable the jury to find that appellant had negligently handled the spraying compound, and because he insists proof was lacking that any poison from the spraying fluid had caused the death of the minnows. We shall answer these two contentions in the reverse order.

The record discloses that appellee, in presenting his evidence in chief, failed to establish that the poisonous compound used by appellant in the spraying was similar to the one subsequently found by laboratory analysis to be present in the pond water, and, at the close of appellee's testimony, appellant moved for a directed verdict, urging this ground for dismissal of the case and, also, as we have mentioned, the further ground that it had not been guilty of negligence in doing the spraying. The motion was overruled and appellant, declining to stand on this ruling of the lower court, proceeded to present its defense to appellee's action. One of appellant's witnesses, on cross-examination, testified that the chemical employed in the spraying was called "Toxatone" and that the active ingredient of that chemical com-

pound was toxaphene or organically combined chlorine. It is not disputed that toxaphene will kill fish. Joe Ragland, a conservation officer of the state and a witness for appellee, had testified in chief that he took a sample of the pond water the day after the spraying and that a chemical analysis showed toxaphene to be present in it to the extent of 1.5 parts for every million parts of water. It had also been brought out by appellee that the laboratory test revealed there was present in the pond water three times the amount of toxaphene or organically combined chlorine which would have been deadly to all fish life in the pond. We therefore have a vital omission in appellee's case supplied by the testimony of appellant, and we believe it can be fairly said from all the evidence that the destruction to the minnows was caused by the poisonous spray falling into the pond from appellant's aircraft. Moreover, appellant, by continuing with the trial and offering proof in its behalf, after its motion for a directed verdict had been overruled at the conclusion of appellee's evidence, took the risk of aiding appellee's cause, and appellant cannot now complain if a much-needed result accrued to its adversary from the testimony of one of its witnesses. See Paducah Dry Goods Co. v. Thompson, 308 Ky. 12, 213 S.W.2d 440, and many cases cited therein.

■ Appellant argues that Lenk v. Spezia, 95 Cal.App.2d 296, 213 P.2d 47, 50, is exactly analogous to the case at bar and is determinative of the issues posed here. We do not think this case is in point. In this decision Lenk owned bees which he alleged were killed as a result of Spezia's dusting a tomato crop with an arsenic compound from an airplane. It was found as a matter of fact that none of the dust fell on the bees but that they got the poison from flowers in a field near by. The bees, according to the opinion, were poisoned while trespassing. More than that, it was established that Lenk knew about the dusting of the fields and could have protected his bees by controlling their feeding range. This opinion, however, did formulate the following rule which we think is unquestionably the law applicable to cases involving carelessness in spreading poison in spraying operations, to-wit:

"It is true that a defendant who is engaged in spraying or dusting fruit, vegetables or other products with the use of an airplane, or otherwise, by negligently spreading liquid or powder known to contain a dangerous proportion of arsenic or other poisons, in such a manner as to endanger the lives of bees, animals or property of another person in the immediate vicinity, may become liable for the damages resulting therefrom."

We believe Miles v. A. Arena & Co. 23 Cal.App.2d 680, 73 P.2d 1260, 1262, more nearly approaches the instant case. The owner of an apiary in the latter decision was held entitled to damages for the death of all the bees in his hives caused by the dusting of a melon patch with calcium arsenate by an independent contractor who used an airplane for such purpose when a light wind floated the poisonous dust from the field to and into the hives. The court, in upholding a judgment for the bee owner, made this statement:

" * * * It must be conceded that, in itself, dusting vegetables to kill pests that prey upon them is a necessary and lawful operation which the owner of the vegetables may perform, either himself or through his servants, or may have performed by an independent contractor. However, he should not do the dusting, or have it done, under conditions which would indicate to a reasonably prudent person that damage to his neighbor would result."

■ Appellant must admit that it had no right to permit its poisonous spray to fall into appellee's pond and thereby cause the loss of all the minnows contained therein. By like token, we must hold that, if appellant allowed the chemical compound to fall and settle in the pond in the spraying operation so that the minnows were poisoned, appellant was guilty of negligence.

We are therefore of the opinion that the evidence adequately supports the findings of the jury and the judgment of the court.

Wherefore, the judgment is affirmed.