AMERICAN INDUSTRIAL LEASING COMPANY,
a Delaware corporation, Plaintiff-Appellant,

v.

Sterling GEIGER and Judith Geiger, individually
and d/b/a Silver Acre Farms, Defendants-Respondents.†

Court of Appeals

*No. 83–187. Submitted on briefs January 4, 1984.—*
*Decided February 24, 1984.*
(Also reported in 345 N.W.2d 527.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas P. Shannon, Diane Slomowitz, Bruce C. O'Neill* and *Fox, Carpenter, O'Neill & Shannon, S.C.* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Roy N. Fine* and *Molbreak Law Office* of Madison.

Brief of amicus curiae was filed by *Boardman, Suhr, Curry & Field* of Madison on behalf of *Wisconsin Bankers Association.*

Before Dykman, J., Decker, J. and Gordon Myse, Reserve Judge.

DYKMAN, J.  Plaintiff American Industrial Leasing Company appeals from a declaratory judgment which held that the Wisconsin Consumer Act (WCA) was applicable to a consumer lease where the amount payable

over the term of the lease exceeded $25,000. We reverse the judgment.

On July 3, 1981, American Industrial entered into a lease agreement with defendant Sterling Geiger, under which American Industrial was to purchase two farm tractors and lease them to Geiger. The lease provided for monthly payments of $816.31 for a term of sixty months, for a total amount payable under the lease of $48,978.60. The lease provided that it was "non-cancellable" for the lease term. It also provided that upon non-payment of rent by the lessees, American Industrial could recover from the lessees all rent to become due under the lease, less a small percentage of the rent not yet due, with or without repossessing the tractors. The lease provided that the lessees would pay all expenses, including reasonable attorney's fees, incurred by American Industrial in enforcing any of the lease terms. Defendant Judith Geiger signed a personal guarantee for Sterling's obligations under the lease.

American Industrial purchased two tractors for $29,-050.00 and delivered them to the Geigers. The Geigers paid $1,632.62 "advance rental payment" on the lease and made their monthly payments for July 1981 through November 1981. They did not make the payments due December 10, 1981 or January 10, 1982. American Industrial made informal attempts to collect the rent due, but was unsuccessful. In February 1982, American Industrial repossessed the tractors and sold them for $19,000. In April 1982, it brought a claim against the Geigers asking for $27,170.05 in damages plus $8,651.00 in attorney's fees.[1] The Geigers counterclaimed, alleging

---

[1] The damages alleged by American Industrial consist of the total amount payable under the lease, $48,978.60, plus $2,905.00 for the salvage value of the tractors at the end of the lease term, minus $19,000.00 credit to the Geigers for the amount American Industrial received when it sold the tractors, minus $5,714.17

that American Industrial violated provisions of the Wisconsin Consumer Act, chs. 421–427, Stats., regarding notice of default, right to cure, and repossession of goods. The trial court granted declaratory judgment for the Geigers and dismissed American Industrial's complaint, holding that the WCA covered consumer leases where the amount payable over the term of the lease exceeded $25,000.

It is undisputed that the lease in question is a "consumer credit transaction" within the meaning of the WCA.[2] The lease also is a "consumer transaction" under

credit to the Geigers for the payments they made. The record does not indicate how an attorney's fee of $8,651.00 might have been reached.

[2] Section 421.301, Stats., provides in part:

In addition to the definitions appearing in chs. 422 to 427, in chs. 421 to 427:

. . . .

(10) "Consumer credit transaction" means a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed. . . . The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

(11) "Consumer lease" means a lease of goods which a merchant makes to a customer for a term exceeding 4 months.

. . . .

(17) "Customer" means a person other than an organization (s. 421.301(28)) who seeks or acquires real or personal property, services, money or credit for personal, family, household or agricultural purposes. . . .

. . . .

(25) "Merchant" means a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction. The term includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee or successor to such person. . . .

the WCA.[3] The issue presented is whether the lease is excluded from coverage under the WCA by sec. 421.202 (6), Stats. That section provides in part:

Chapters 421 to 427 do not apply to:

. . . .

(6) Consumer credit transactions in which the amount financed exceeds $25,000 or other consumer transactions in which the cash price exceeds $25,000;

. . . .

The Geigers argue that because the WCA defines "amount financed" in terms of consumer credit sales, and consumer loans and defines "cash price" in terms of sales, the legislature must have intended that the exclusionary provisions of sec. 421.202(6), Stats., not apply to leases.[4]

---

The lease in question was a "consumer lease," because it was a lease of goods made to a customer by a merchant for a term exceeding four months. Since it was a consumer lease, it was therefore a "consumer credit transaction" as well.

[3] Section 421.301, Stats., provides in part:

(13) "Consumer transaction" means a transaction in which one or more of the parties is a customer for purposes of that transaction.

. . . .

(44) "Transaction" means an agreement between 2 or more persons, whether or not the agreement is a contract enforceable by action, and includes the making of and the performance pursuant to that agreement.

[4] Section 421.301, Stats., provides in part:

(5) "Amount financed" in a consumer credit transaction means the total of the following items from which any prepaid finance charge or required deposit balance has been excluded:

(a) In a consumer credit sale, the cash price of the real or personal property or services, less the amount of any downpayment whether made in cash or in property traded in, or, in a consumer loan, the amount paid to, receivable by or paid or payable to the customer or to another person in his behalf;

(b) In a consumer credit sale, the amount actually paid or to be paid by the creditor pursuant to an agreement with the customer to discharge a security interest in or a lien on property traded in; and

(c) To the extent not included in par. (a) or (b):

They argue that by wording the exclusion as it did, the legislature demonstrated an intent to bring all consumer leases, regardless of the amount involved, under the protection of the WCA.

"[A] statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose." *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982). The "leading idea" of the exclusions in sec. 421.202(6), Stats., is that consumers entering transactions involving $25,000 or less should be given the protection of the WCA, but that consumers entering transactions involving larger amounts are presumed able to protect themselves. It would be illogical for the legislature to extend protection to leases involving hundreds of thousands of dollars but to grant no protection to credit sales of over $25,000. Statutes cannot be construed in derogation of common sense. *Id.* at 246, 313 N.W.2d at 826.

The Geigers note that when the legislature was considering 1971 Assembly Bill 1057, which created the WCA, it considered and rejected an amendment which would have limited coverage of consumer leases to those where the amount payable under the lease was less than

1. Any applicable sales, use, excise or documentary stamp taxes;
2. Amounts actually paid or to be paid by the creditor for registration, certificate of title or license fees; and
3. Additional charges permitted by s. 422.202.

. . . .

(7) "Cash price" means the price at which property or services are offered, in the ordinary course of business, for sale for cash, and may include:

(a) The cash price of accessories or services related to the sale such as delivery, installation, alterations, modifications and improvements; and

(b) Taxes, to the extent imposed on the cash sale.

$25,000. They argue that the legislature therefore must have intended the WCA to cover all consumer leases.

We employ rules of statutory construction, including consideration of the statute's history, only where the statute is ambiguous. *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47, 52 (1981). A statute is ambiguous if it could be construed in two or more ways by reasonably well-informed persons. *Id.* at 561, 313 N.W.2d at 51–52. Because the exclusions in sec. 421.202(6), Stats., are defined in terms of loans and sales, it is unclear whether the legislature intended them to apply to leases. We therefore may look to the legislative history of the WCA to aid us in construing it.

The rejected amendment relied on by the Geigers did not simply propose a dollar limit for consumer leases. It proposed that the pending bill, which was based on the National Consumer Law Center's *National Consumer Act: A Model Code for Consumer Protection* (1970), be scrapped and the Uniform Consumer Credit Code (1968) be adopted instead. The legislature's rejection of the Uniform Consumer Credit Code in favor of the National Consumer Act cannot be interpreted as a decision that all consumer leases should be covered by the WCA.

Because we have determined that consumer leases are subject to the exclusionary provision of sec. 421.202(6), Stats., we must next determine what the term "amount financed" means in the context of consumer leases. American Industrial contends that "amount financed" could be construed to mean the total amount payable under the lease. Because the rental payments under a consumer lease must contain an interest component, we construe the "amount financed" to be the purchase price or the cash price for the property leased.

Interest is normally paid for the use of another's money. The Geigers did not borrow American Industrial's money, but they had the use of property American Industrial had purchased. American Industrial could have invested its money elsewhere had it not used the money to purchase the tractors. Leasing the tractors to the Geigers without including an interest component in the rental payments would have been equivalent to making the Geigers a five-year, interest-free loan of the purchase price of the tractors. It is unreasonable to suppose that American Industrial would do this. In fact, American Industrial did not do so: the total amount payable under the lease is significantly greater than the purchase price of the tractors. The difference represents the charge paid by the Geigers for the use of American Industrial's tractors, *i.e.*, the interest component.[5]

The lease does not specifically provide that part of each monthly payment is attributable to interest. This is not dispositive of whether interest is being charged, however. The concept of unstated interest is well established. Section 483 of the Internal Revenue Code of 1954, for instance, provides that interest will be imputed to deferred-payment sales which meet specified criteria even though interest is not required under the sales contract. The purpose of sec. 483 is to prevent taxpayers from converting ordinary income to capital gain by making no reference in the sales contract to an interest

---

[5] We include several factors within the term "interest" or "interest component". Risk, inflation cost and opportunity cost are all factors that, together with the "use of money" factor or "real" interest rate, determine the difference between the purchase price of the tractors and the total of the lease payments. Federal and state tax implications, government regulations that differentiate between leases and loans and an opportunity benefit to the lessor may also indirectly affect the interest component of leases, as will the expected disposition of the leased goods at the end of the lease term.

component. *Vorbleski v. Commissioner of Internal Revenue*, 589 F.2d 123, 134 (3d Cir. 1978). Our construction of "amount financed" similarly recognizes the interest factor which is present when the dollar amount payable under a long-term lease is larger than the purchase price of the leased goods.

Our construction of "amount financed" as applied to leases is consistent with the definitions of "amount financed" found in sec. 421.301(5), Stats., which apply to credit sales and loans.[6] Under sec. 421.301(5), the "amount financed" is the amount to which an interest charge or a finance charge is added, not the entire amount (including the interest or finance charges) that the customer will pay the merchant. We construe the "amount financed" under a lease analogously, to refer to the dollar amount to which the interest charge is added, *i.e.*, the purchase price of the leased goods.

The amount financed under the lease in question was $29,050.00. The lease therefore falls within the exclusion in sec. 421.202(6), Stats., for "consumer credit transactions in which the amount financed exceeds $25,000". The lease is therefore not governed by the WCA.

*By the Court.*—Judgment reversed.

---

[6] *See* note 4, *supra.*