Susan J. COE, Petitioner-Appellant,

v.

BOARD OF REGENTS OF the UNIVERSITY OF
WISCONSIN SYSTEM, Respondents.†

Court of Appeals

*No. 85–2030. Argued February 25, 1987.—Decided May 26,
1987.*

(Also reported in 409 N.W.2d 166.)

---

† Petition to review filed. This petition was not decided at the
time the volume went to press. Its disposition will be reported in a
later volume.

For the petitioner-appellant there were briefs by *John S. Williamson, Jr.,* of *Habush, Habush & Davis, S.C.,* of Milwaukee, and oral argument by *John S. Williamson, Jr.*

For the respondent there were briefs by *Bronson C. La Follette,* attorney general, and *LeRoy L. Dalton,* assistant attorney general, and *Daniel S. Farwell,* and oral argument by *Daniel S. Farwell,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J.   Susan Coe appeals from an order affirming the University of Wisconsin Board of Regents' decision not to hold a formal hearing to review the chancellor's denial of tenure. Coe contends that faculty members denied tenure have rights under Wis. Adm. Code sec. UWS chapter 3 (January, 1986) and that the chancellor of the University of Wisconsin-Stevens Point erroneously denied her tenure because he considered her department's tenure situation, a factor she contends is not enumerated in sec. UWS 3.06(1)(b). She also contends she was entitled to a contested case hearing before the board of regents regarding the denial of tenure. Because we conclude the chancellor properly applied the tenure criteria and that Coe has not met the requirements for a contested case hearing, sec. 227.064(1), Stats. (1981–82),[1] we affirm.

---

[1]Section 227.064, Stats. (1981–82) was renumbered by 1985

The board of regents functions as the administrative agency in the university system and has "primary responsibility for governance of the system...." Sec. 36.09(1)(a), Stats. (1981–82); *Patterson v. University Board of Regents,* 119 Wis. 2d 570, 577, 350 N.W.2d 612, 615 (1984). Pursuant to sec. 36.13(3), Stats. (1981–82), the board adopted sec. UWS chapter 3 relating to tenure and probationary appointments. Tenure is granted upon affirmative recommendation of the appropriate academic department and chancellor. Sec. 36.13(1)(a); sec. UWS 3.06(1)(a).

Coe was an assistant professor of social work in the Department of Sociology and Anthropology at UW-Stevens Point under a series of yearly probationary contracts beginning in 1976. Her 1976 appointment letter stated that tenure would be based on her performance and other factors including but not limited to a programmatic need in her department and the department's financial ability to add another tenured position. Subsequent appointment letters referred to these factors. In 1979, 1980 and 1981, Coe's department recommended that she be reappointed and granted early tenure. The chancellor did not grant early tenure, stating that the university prefers to defer tenure decisions until the last year of the probationary period. Section 36.13(2)(b), Stats. (1981–82) limits probationary appointments to seven consecutive academic years.

Academic year 1981–82 was Coe's "up or out" year; she had to become tenured or her employment with the university would terminate. In March 1982, her department's Retention and Tenure Committee

Wis. Act 182, sec. 28. The substance of sec. 227.064 is now found in sec. 227.42.

voted to retain her for an eighth year and to grant tenure, despite the fact that her department was overtenured, or had a tenure density problem.[2] The chancellor decided not to renew Coe's employment or grant tenure, stating:

> Many factors contributed to my overall decision to not recommend tenure. Application of the university tenure management policy reveals that no tenurable position exists in [your department]. In fact, your department currently is tenured to the extent of 3.19 positions over that allowed by the policy. Your department recognized the fact and argued for an exception. Any exception must be based on strong and compelling reasons related to academic program and your individual qualifications and performance. You hold the minimum academic credentials for tenure for individuals teaching in social work. However, you do not hold the doctorate. Your scholarly activity, as evidenced by publication and regional and national professional service, is not outstanding. The need for instruction in social work is not a major priority of the institution. In fact, we have no major, minor or concentration in social work. In short, I found no strong and compelling reasons to recommend tenure.

After receiving the chancellor's reasons for denying tenure in accordance with sec. UWS 3.07(1)(a), Coe

---

[2]The tenure management policy establishes tenure density guidelines: "the current number of tenured faculty members in a given department [cannot] exceed 80% of the number of FTE faculty positions generated (according to a specific formula) by the projected student enrollment. . . ." In departments which have exceeded 80%, tenure may be granted to a faculty member only after the department has made "compelling arguments" to justify an exception to the 80% limit.

266

appealed the decision to the faculty appeals committee provided by sec. UWS 3.08(1). She claimed she was discriminated against because early tenure was granted to a male faculty member with the same starting date after the department was overtenured.[3] She also claimed she was never given any indication that her performance was below tenure requirements. The committee upheld the chancellor's decision in December 1982. Coe then requested that the board appoint a regent to review her case. The appointed regent recommended that the board provide a hearing. An attorney and a TAUWF (The Association of University of Wisconsin Faculties) representative appeared on Coe's behalf when the board considered Coe's hearing request in November 1983. On December 9, 1983, the board denied Coe's request for a formal hearing and then denied her request for reconsideration. Coe petitioned for review under chapter 227, Stats. (1981–82). The trial court affirmed the board's decision.

### TENURE CRITERIA

Coe argues she met the tenure criteria set forth in sec. UWS 3.06(1)(b) and that the chancellor erroneously considered her department's tenure density problem in denying her tenure. She argues that because tenure density is not an enumerated criterion, the chancellor exceeded his authority in considering it. The board contends the chancellor properly interpreted sec. UWS 3.06(1)(b) as permitting consideration of a department's tenure density in granting or denying tenure.

Section UWS 3.06(1)(b) provides:

---

[3]Coe has not pursued this discrimination allegation on appeal.

Decisions relating to renewal of appointments or recommending of tenure shall be made in accordance with institutional rules and procedures which shall require an evaluation of teaching, research, and professional and public service and contribution to the institution. The relative importance of these functions in the evaluation process shall be decided by departmental, school, college, and institutional faculties in accordance with the mission and needs of the particular institution and its component parts. Written criteria for these decisions shall be developed by the appropriate institutional faculty bodies.

█ We independently review administrative action and our scope of review is identical to that given the trial court by sec. 227.20, Stats. (1981–82). *Sanitary Transfer & Landfill, Inc. v. DNR,* 85 Wis. 2d 1, 12, 270 N.W.2d 144, 149 (1978). The board's validly enacted administrative rules[4] have the force and effect of law and are "subject to the same principles of construction as apply to the construction of statutes...." *Law Enforce. Stds. Bd. v. Lyndon Station,* 101 Wis. 2d 472, 489, 305 N.W.2d 89, 97 (1981).

[T]he interpretation by an administrative agency of its own regulation is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous. This rule of construction accords with the principle that "a construction which fosters the purpose of the rule is to be sought and is favored over a construction which will defeat the manifest object of the rule." An administrative agency knows the specific pur-

---

[4]Coe does not suggest that sec. UWS 3.06(1)(b) was invalidly promulgated.

poses of the regulations it has promulgated. Moreover, an agency has a certain expertise in the area it is called upon to regulate. Thus we believe that an agency is in the best position to interpret its own regulations in accordance with their underlying purposes. For this reason, in construing such regulations, we ordinarily defer to the adopting agency's interpretation.

*Pfeiffer v. Board of Regents,* 110 Wis. 2d 146, 154–55, 328 N.W.2d 279, 283 (1983) (footnote and citations omitted).

The chancellor is the executive head of his or her institution and is responsible for administering board policies. Sec. 36.09(3), Stats. (1981–82). Subject to these policies and in consultation with the faculty, the chancellor defines and administers "institutional standards for faculty peer evaluation and screening candidates for appointment, promotion and tenure...." *Id.* Definition and administration of institutional standards requires interpretation of the board's rules. We reject Coe's characterization of the chancellor as an academic who lacks expertise to interpret the board's rules. The legislature views the chancellor as an administrator charged with implementing board policies. Given this recognition of the chancellor's expertise, we will defer to the chancellor's interpretation of sec. UWS 3.06(1)(b) unless it is inconsistent with the rule's language or clearly erroneous.

Construction of an administrative rule is a question of law and the primary source of construction is the rule's language. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 648, 651 (1985). A rule is not ambiguous merely because the parties

disagree as to its meaning. Ambiguity occurs when reasonably "well-informed" persons can understand the rule in two or more senses. *Recht-Goldin-Siegal Const. v. Dept. of Revenue,* 64 Wis. 2d 303, 306, 219 N.W.2d 379, 380 (1974).

Section UWS 3.06(1)(b) is not ambiguous. It lists several performance factors to be considered in making tenure decisions, and assigns the task of balancing these factors, in light of the needs and mission of the particular institution, to the faculty. It also authorizes the faculty to establish written criteria for making such decisions.

As directed by sec. UWS 3.06(1)(b), the UW-Stevens Point faculty senate approved a policy statement on probationary and tenure appointments in April 1979. This statement introduced guidelines and procedures intended to assist in tenure management. The policy establishes tenure density as a criterion in determining whether a faculty member's position can be designated as a tenured position. The vice chancellor interpreted the policy as conditioning the availability of a tenured position upon institutional need, departmental ability to meet the tenure guidelines, and the faculty member's performance. The policy was in effect when Coe was recommended for early tenure in spring 1980. Because the written criteria developed under sec. UWS 3.06(1)(b) established tenure density as a relevant criterion, the chancellor did not err in considering it. We do not consider whether, in the absence of such written criteria, the chancellor may consider other, nonspecified nonperformance criteria. The chancellor's interpretation refers to the performance and nonperformance criteria set forth in

the rule and the tenure management policy promulgated in accordance with the rule. We will therefore defer to his interpretation because it is consistent with the rule's language.

Coe interprets sec. UWS 3.06(1)(b) as requiring that tenure be granted to any faculty member who has fulfilled the individual performance requirements. This interpretation ignores the "relative importance" language of the rule. Coe suggests that she ought to have been granted tenure regardless of her department's ability to sustain another tenured position and then laid off because her department was overtenured. This is nonsensical. We cannot construe a rule in derogation of common sense, *American Industrial Leasing Co. v. Geiger,* 118 Wis. 2d 140, 145, 345 N.W.2d 527, 530 (Ct. App. 1984), nor can we interpret a rule "so as to work an unreasonable or absurd result." *In re Paternity of A.S.D.,* 125 Wis. 2d 529, 533, 372 N.W.2d 921, 923 (Ct. App. 1985). Interpreting sec. UWS 3.06(1)(b) as granting automatic tenure regardless of institutional need yields an unreasonable result.

### CONTESTED CASE HEARING

Coe argues she was entitled to a contested case hearing before the board regarding the denial of tenure.[5] Section 227.064(1), Stats. (1981–82), provides:

> In addition to any other right provided by law, any person filing a written request with an agency

---

[5]Although Coe has argued that she was unconstitutionally deprived of her property interest in becoming tenured, here she argues only that she was statutorily entitled to a contested case hearing.

for hearing shall have the right to a hearing which shall be treated as a contested case if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

Section 227.064(1) "afford[s] a hearing right to those who are not granted a specific right to a hearing by other statutory provisions or administrative rules." *Milwaukee Met. Sewerage Dist.,* 126 Wis. 2d at 73, 375 N.W.2d at 652.

The legislature and the board of regents have established procedures to govern faculty employment decisions. Sections UWS 3.07 and 3.08, promulgated by the board, apply to renewal of faculty appointments and granting of tenure. Neither section grants an appeal to or hearing before the board. Section 36.13(5), Stats. (1981–82) requires notice and a hearing for a just cause dismissal of a tenured or probationary faculty member prior to the end of a contract term. Neither existing statutes nor administrative rules grant a nonrenewed probationary faculty member a board hearing. A contested hearing is available if the faculty member satisfies the conditions specified in sec. 227.064(1)(a)–(d), Stats. (1981–82).

██ Coe claims a "substantial interest" in becoming tenured at the end of her probationary period and argues that a contested hearing is necessary to protect

this interest. We disagree. Coe merely has a "unilateral expectation" of becoming tenured, not a "substantial interest." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). An employee's interest in continued employment is created and defined "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. Coe's interest in continued employment at UW-Stevens Point was created and defined by the terms of her employment under a series of probationary contracts. The appointment letters referred to nonperformance factors as criteria for tenure. The terms of Coe's probationary employment did not secure her interest in becoming tenured or create any legitimate claim to it. In the absence of a substantial interest in becoming tenured, the board was not required to provide a contested hearing. Coe has not satisfied sec. 227.064(1)(a), Stats. (1981–82).

There is no evidence that the legislature intended to protect Coe's interest in becoming tenured. Sec. 227.064(1)(b), Stats. (1981–82). The legislature requires a hearing when a tenured faculty member is dismissed or when a probationary faculty member is dismissed prior to the expiration of a contract. Sec. 36.13(5), Stats. (1981–82). "Under the general rule of statutory construction, *expressio unius est exclusio alterius,* the express mention of one matter excludes other similar matters not mentioned." *State v. Smith,* 103 Wis. 2d 361, 366, 309 N.W.2d 7, 9 (Ct. App. 1981) (footnote omitted), *aff'd,* 106 Wis. 2d 17, 315 N.W.2d 343 (1982). Having specified in sec. 36.13(5) when a hearing is required, the legislature intended to deny nonrenewed

probationary faculty members a hearing. Coe has not satisfied sec. 227.064(1)(b).

Coe argues she was not notified that tenure density or other nonperformance criteria would be considered in the tenure decision. Her appointment letters stated that tenure would be based on performance and nonperformance factors including the tenure situation in her department. The chancellor found that the tenure management policy was distributed to all faculty members although Coe insists she never received a copy of it. The chancellor's finding that the policy was distributed to all faculty members required a credibility determination which a reviewing court may not disregard. *Bennett v. Larsen Co.,* 118 Wis. 2d 681, 706, 348 N.W.2d 540, 554 (1984). Furthermore, notice was not required because Coe did not have a substantial interest in becoming tenured.

*By the Court.*—Order affirmed.

SUNDBY, J. (*concurring*). I concur in the judgment and in that portion of the majority opinion which holds that Coe was not entitled to a contested case hearing before the board of regents. However, I agree with the board that Wis. Adm. Code, sec. UWS 3.06(1)(b), does not restrict the chancellor, under the direction of the board, from applying to the decision whether to recommend tenure "governance" criteria which are not enumerated in sec. UWS 3.06(1)(b).

The administrative regulation establishes "qualification" criteria by which a candidate for tenure is evaluated. Under this rule, decisions regarding tenure require an evaluation of (1) teaching, (2) research, (3) professional service, (4) public service, and (5) contribution to the institution. Wis. Adm. Code, sec. UWS

3.06(1)(b). Coe contends that these criteria are exclusive. Thus, she contends she is entitled to tenure regardless of the fact that her department is already overtenured.

I agree with the majority that interpreting the administrative rule as granting automatic tenure regardless of institutional need yields an unreasonable result. My disagreement with the majority is that I do not believe that the chancellor's authority to deny tenure must be found in Wis. Adm. Code, sec. UWS 3.06(1)(b). I believe the chancellor's authority exists under sec. 36.09(3), Stats., which provides that the chancellors are the executive heads of their respective faculties and institutions and are vested with the responsibility to administer board policies.

Under sec. 36.09(1)(a), Stats., the board of regents has primary responsibility for governance of the university system, including planning for the future needs of the state for university education. Subject to the responsibilities and powers of the board, the president and the chancellor, the faculty of each institution is vested with responsibility for the immediate governance of such institution and shall actively participate in institutional policy development. Sec. 36.09(4).

Pursuant to its authority, the board of regents in 1974 adopted a resolution which read in part:

> [That the system administration and the institutions be directed to] continue and accelerate long-range planning which takes into account the demographic data of the 1980's and 1990's in such a way as to assure that their personnel commitments and decisions in the intervening years protect against those conditions which lead to fiscal emergency declarations.

In 1979 the faculty senate approved a "Tenure Management Policy" to assist the departments and the administration in the assessment of need. Because Coe's department was overtenured, the dean recommended that Coe be denied tenure. The vice chancellor concurred and the chancellor accepted the recommendation.

Because I believe that the decision not to recommend tenure for Coe was made on the basis of a permissible goverance consideration—tenure density—I agree that the judgment of the trial court should be affirmed. I do not agree with the majority, however, that we should rest our affirmance upon an interpretation of Wis. Adm. Code, sec. UWS 3.06.